1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY D. ROSS,

11            Petitioner,                        No. 2:05-cv-01705 MCE CHS P

12       vs.

13   TOM L. CAREY,

14            Respondent.                   <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16   I.       INTRODUCTION

17            Petitioner, Larry D. Ross, is a state prisoner proceeding *pro se* with a petition for writ

18   of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an aggregate sentence

19   of ten years following his convictions by jury trial in the Sacramento County Superior Court, Case

20   No. 03F04741, for infliction of corporal injury with personal infliction of great bodily injury, CAL.

21   PENAL §§ 273.5(a) and 12022.7(e), and battery with serious bodily injury, CAL. PENAL § 243(d).

22   Petitioner also waived his right to a jury trial and admitted a prior felony conviction and period of

23   incarceration, pursuant to CAL. PENAL § 667.5(b).  With this petition, Petitioner challenges the

24   constitutionality of those convictions.  Specifically, Petitioner claims that (1) his constitutional rights

25   to a jury trial and due process were violated by the trial court's failure to adequately investigate and

26   discharge Juror No. 9, who indicated she could not concentrate due to back pain and had "blacked

1

out" during testimony; (2) he did not knowingly, intelligently, and voluntarily waive his constitutional rights before admitting a prior felony conviction; and (3) California Evidence Code section 1109, which permits the admission of evidence of prior acts of domestic violence in a criminal prosecution for domestic violence, is unconstitutional.  Upon careful consideration of the record and applicable law, it is recommended that this petition for writ of *habeas corpus* relief be denied.

II.     FACTUAL BACKGROUND

The basic facts of Petitioner's crimes were summarized in the unpublished opinion[1] of the California Court of Appeals, Third Appellate District, as follows:

> On June 3, 2003, Latrice B. was six months pregnant. [Petitioner] was her boyfriend of more than two years.  At that time she, [Petitioner], and her child, Isaiah, were living together with Sherri T. and Willie T. and their children.
>
> Sherri T. testified that when she woke up and came out of her bedroom on the morning of June 3, 2003, she heard her cousin Latrice and [Petitioner] having a disagreement out on the front porch about doctor's appointments, transportation, and taking care of the kids.  Sherri could hear her husband trying to settle them down.
>
> After Latrice came inside the house, Sherri heard [Petitioner] say, "Tell your cousin not to go in the room and fuck with my clothes." He said Latrice was going to get hurt if she did not leave his stuff alone.  Sherri saw Latrice go into her bedroom and put [Petitioner's] clothes into a garbage bag.  Latrice came back into the hallway. [Petitioner] met her there.  Before she could throw the bag of clothes at [Petitioner], [Petitioner] punched her in the face.  All told, he punched Latrice twice in the face and twice in the bottom of her stomach.  Latrice did not hit [Petitioner], nor did she hit her face against a wall. [Petitioner] told Latrice to get cleaned up and he would take her to the hospital.
>
> Dr. Kenneth Collins testified he treated Latrice in the emergency room of Kaiser Hospital on June 3, 2003.  Latrice had a laceration on the center of her face that was four centimeters long and one centimeter deep, going through the subcutaneous tissue.  The laceration was split wide open about one and a half centimeters.  The laceration required approximately 14 sutures.  Latrice said she had

---

[1]  The appellate court's opinion in *People v. Larry Darnell Ross*, No. C045473, was lodged in the record as Document 4 on April 5, 2006

fallen and hit her head.

Latrice's mother testified that she received a call from her daughter on June 3, 2003, telling her that [Petitioner] had hit her in the face. [Petitioner] got on the phone and told Latrice's mother that he and Latrice got into a fight, it got out of hand, and he hit Latrice. He apologized.

Latrice testified at [Petitioner's] trial that she was injured when she hit her face on a wall. Latrice denied at trial that [Petitioner] ever punched her in the face or the stomach. Latrice also testified that she told her mother that she hit her face on the wall. She denied hearing [Petitioner] apologize to her mother for losing control and hitting her. She said she told the doctor at the hospital that she fell because she and [Petitioner] had agreed that was what she would say. She also told the police that she fell. She admitted that story was made up.

On June 13, 2003, while she was in the hospital for the birth of her son, Latrice applied for a restraining order against [Petitioner]. The application included a section that state, under penalty of perjury, "[t]here has been physical abuse in the past, but [Latrice] has never reported it and is fearful and does not want to discuss any other incident." Latrice claimed she signed the papers without reading them under threat of having Child Protective Services called.

Patricia L. testified that she lived with [Petitioner] for 17 or 18 years and had five children with him. Patricia L. Could not remember [Petitioner] committing any act of domestic violence against her on February 11, 1995, despite photographs taken at the time. Police Officer Eklund testified that he took a report from Patricia L. in 1995 in which she said [Petitioner] had struck her on the back four times with an electric cord. Photographs taken by Officer Eklund of Patricia L.'s back showing [sic] marks consistent with being hit with a cord were admitted into evidence.

(Lodged Doc. 4 at 2-4).

III.     PROCEDURAL HISTORY

        Petitioner timely appealed his convictions to the California Court of Appeal, Third Appellate District. The appellate court affirmed his convictions in a reasoned opinion on December 7, 2004. Petitioner then sought review of his convictions in the California Supreme Court. That petition was denied without comment on February 16, 2005. Petitioner filed this federal petition for writ of *habeas corpus* on August 24, 2005. Respondent filed an answer on March 13, 2006. Petitioner did not file a traverse.

1   IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

2          This case is governed by the provisions of the Antiterrorism and Effective Death

3   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

4   its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

5   F.3d 1484, 1499 (9th Cir. 1997).   Under AEDPA, an application for a writ of habeas corpus by a

6   person in custody under a judgment of a state court may be granted only for violations of the

7   Constitution or laws of the United States.   28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362,

8   375 n. 7 (2000).   Federal *habeas corpus* relief is not available for any claim decided on the merits

9   in state court proceedings unless the state court's adjudication of the claim:

10          (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established federal law, as
11          determined by the Supreme Court of the United States; or

12          (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
13          State court proceeding.

14    28 U.S.C. § 2254(d).   Although "AEDPA does not require a federal habeas court to adopt any one

15  methodology," *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), there are certain principles which guide

16  its application.

17          First, AEDPA establishes a "highly deferential standard for evaluating state-court

18  rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).   Accordingly, when determining whether

19  the law applied to a particular claim by a state court was contrary to or an unreasonable application

20  of "clearly established federal law," a federal court must review the last reasoned state court

21  decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911,

22  918 (9th Cir. 2002).   Provided that the state court adjudicated petitioner's claims on the merits, its

23  decision is entitled to deference, no matter how brief. *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232

24  F.3d 1031, 1035 (9th Cir. 2000).   Conversely, when it is clear that a state court has not reached the

25  merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential

26  standard does not apply and a federal court must review the claim *de novo*. *Nulph v. Cook*, 333 F.3d

4

1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381). In other words, "clearly established Federal law" will be " the governing legal principle or principles set forth by [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64. It is appropriate, however, to examine lower court decisions when determining what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal court may grant a writ of *habeas corpus* only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. It is not necessary for the state court to cite or even to be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Moreover, a state court opinion need not contain "a formulary statement" of federal law, but the fair import of its conclusion must be consistent with federal law. *Id*.

Under the "unreasonable application" clause, the court may grant relief "if the state court correctly identifies the governing legal principle...but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694. As the Supreme Court has emphasized, a court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410. Thus, the focus is on "whether the state court's application of clearly established federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

5

1    Finally, the petitioner bears the burden of demonstrating that the state court's

2   decision was either contrary to or an unreasonable application of federal law.  *Woodford*, 537 U.S.

3   at 24; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

4   V.    DISCUSSION

5         A.    JUROR NO. 9

6         Petitioner claims that his constitutional rights to due process and a jury trial under

7   the Fifth, Sixth and Fourteenth Amendments were violated by the trial court's failure to adequately

8   investigate and discharge Juror No. 9, who indicated during the trial that she could not concentrate

9   due to back pain and had "blacked out" during trial testimony.  Petitioner contends that the trial

10  court had an affirmative duty to conduct a thorough inquiry regarding the duration and severity of

11  Juror No. 9's back problems in order to determine whether she would be able to competently

12  discharge her duties as a juror.  According to Petitioner, he suffered prejudice because the trial

13  court's failure to conduct such an inquiry resulted in a verdict rendered by an incompetent juror.

14  The California Court of Appeal, Third Appellate District, summarized the background of

15  Petitioner's claim as follows:

16         The record reflects that before the start of the second day of
17         testimony, Juror No. 9 presented the court with a note from her
           chiropractor stating that she suffers from severe spine subluxations
18         in the cervical lumbar area of the spine.  The note further stated that
           sitting for an extended period of time would be ill advised.  It would
19         severely exacerbate this condition.  The chiropractor stated the juror
           was unable to participate as a juror.  Counsel and the court agreed to
20         voir dire the juror to see if her physical condition could be
           accommodated with more frequent breaks and by moving her to a
21         position where she could stand or if she should be replaced with an
           alternate juror.

22         When questioned by the trial court as to possible accommodations,
23         the following colloquy took place:

24             "THE JUROR: My problem yesterday was, I couldn't even
               get out of the – this very comfortably; and, besides, when the
25             witness was there when I was having pain, I lost
               concentration and I couldn't really understand or – I was
26             blacked out yesterday, especially in the afternoon, so – and
               that's what I was afraid of.  I sit here and I am feeling the

6

pain.  I can't concentrate.

"THE COURT: Does it help if you stand at certain times, alternate standing and sitting?

"THE JUROR: Yes.  When – I have the experience that when there was a selection process and I was free to move, then I was okay, but sitting for a long time makes my back real bad.

"THE COURT: What I'm asking is whether or not we can – We will not make you sit for a long period of time.  We can have you sit in one of those seats back there, and if you want, you can stand up next to the wall, you know, when you start to feel uncomfortable.  If you want to take more frequent breaks, then raise your hand and we can accommodate you so that you can get up and walk around.  Will that help you?

"THE JUROR:  I don't know.  I don't know.  I'm not sure.  As I said, I can't concentrate when I'm in pain, and so I don't want to be unfair and unreasonable because I couldn't concentrate.

"THE COURT: Well, we don't want you in any pain and we certainly want you to concentrate.  So I guess what I'm asking is: Can we make some accommodations for you that will ease your pain and, you know, allow you to concentrate?  Can we sit you over there and you can, like I said, stand up when you feel like it, take frequent breaks?

"THE JUROR: I can try...."

After a few more exchanges regarding the arrangements to be made, it was agreed to try it for an hour or so.  If the juror was uncomfortable or she was having problems concentrating, she was to raise her hand right away so that something could be done to help her.

The deputy district attorney then asked to approach the bench.  An unreported side bar discussion was held, after which the following discussion occurred:

"THE COURT: Mrs. [Redacted], let me follow up on something that you mentioned earlier.  You said that you were in such pain yesterday afternoon that you blacked out.

"THE JUROR: Yes.  I just cannot – Yeah.  I was blacking out and I could not understand what the witness was saying.  I just totally lost it for a few seconds.

"THE COURT: Was it for a few seconds, or do you think longer than that?

"THE JUROR: Probably three seconds.  I didn't even remember what the witness said.  I was trying to concentrate and I couldn't.

"THE COURT: Right.  And you think it was for seconds?

"THE JUROR: Yes.

"THE COURT: More than that?  A minute?

"THE JUROR: Probably a minute.  And I was writing it down, and I just totally couldn't concentrate.

The court asked counsel to approach and another unreported side bar was held.  The court then told the juror that they would help her move and see how it went for the morning.  If she had any problems, she was directed to raise her hand right away.  The record does not reflect the juror reported any further problems.  The record does not reflect any request for further questioning of the juror or for discharge of the juror.

(Lodged Doc. 4 at 5-8).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a trial by a fair and impartial jury. *Irvin v. Dowd*, 366 U.S. 717 (1961).  The right to a jury trial is extended to state criminal trials through the Due Process Clause of the Fourteenth Amendment.  *Duncan v. Louisiana*, 391 U.S. 145, 148-149 (1968) (holding that "the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which – were they to be tried in a federal court – would come within the Sixth Amendment's guarantee.").  A defendant in a criminal case is also entitled to a jury that reaches a verdict on the basis of evidence produced at trial.  *Turner v. Louisiana*, 379 U.S. 466 (1965); *Estrada v. Scribner*, 512 F.3d 1227, 1238 (9th Cir. 2004).

In California, discharge of jurors for cause is governed by Penal Code section 1089, which provides that a trial court may discharge a juror who "becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor."  The Ninth Circuit has upheld California's procedure for discharging and replacing jurors, which the trial court followed here, as facially constitutional.

*Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985) ("The California substitution procedure followed by the trial court preserved the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." (internal citations omitted)). *See also Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997). In circumstances where a juror is challenged for cause, the trial court has "considerable discretion in determining whether to hold an investigative hearing on allegations of juror misconduct and in defining its nature." *U.S. v. Barrett*, 703 F.2d 1076, 1083 (9th Cir. 1983). Indeed, the Ninth Circuit has held that clearly established federal law does not require state or federal courts to hold an evidentiary hearing every time a claim of juror misconduct or bias is raised. *Tracy v. Palmateer*, 341, F.3d 1037, 1042-45 (9th Cir. 2003).

Inattentiveness can be a form of juror misconduct, and may constitute cause to discharge a juror, however inattentiveness is not, *per se*, a violation of a criminal defendant's right to due process, a fair trial, or an impartial jury. *Tanner v. United States*, 483 U.S. 107, 126-27 (1987). *See also United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995) ("[T]he presence of all awake jurors throughout an entire trial is not an absolute prerequisite to a criminal trial's ability to reliably serve its function as a vehicle for determination of guilt or innocence. A single juror's slumber is thus not *per se* plain error." (internal citations omitted)); *United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987) (finding no violation of due process or the right to a fair trial and impartial jury when a juror napped through part of the trial testimony). Thus, even when a petitioner has demonstrated that a juror was inattentive during the course of a trial, *habeas corpus* relief may be granted only if the alleged error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S 619, 637 (1998). In other words, a claim that a juror was unable to competently discharge their duties is reviewed to determine whether a petitioner "was prejudiced to the extent that he did not receive a fair trial." *Morris v. Ylst*, 52 F.3d 334,

The California Court of Appeal, Third Appellate District, considered and rejected

Petitioner's claim on the merits,[2] finding that "the trial court fulfilled its duty to adequately inquire into the possible need to discharge Juror No. 9." (Lodged Doc. 4 at 5.) The court explained its reasoning as follows:

> Penal Code section 1089 authorizes a trial court to discharge a juror if, among other reasons, "good cause" is shown that the juror is "unable to perform [her] duty." A factual finding that a juror cannot concentrate is good cause for discharge of that juror. (*Mitchell v. Superior Court* (1984) 155 Cal.App.3d 624, 629.) When a trial court is put on notice that good cause to discharge a juror may exist, "it is the court's duty to make whatever inquiry is reasonably necessary to determine if the juror should be discharged." (*People v. Burgener* (1986) 41 Cal.3d 505, 520, overruled on another point in *People v. Reyes* (1998) 19 Cal.4th 743; *People v. Espinoza* (1992) 3 Cal.4th 806, 821.)

> The trial court fulfilled this duty by questioning Juror No. 9 about the note from her chiropractor and the accommodations necessary to ensure her concentration. The court also queried Juror No. 9 about her lack of concentration the previous day.

> Regarding Juror No. 9's prior lapse of concentration, defendant suggests Juror No. 9's answers show she was in pain the entire previous day, especially in the afternoon, and that she could not concentrate when she was in pain. Defendant contends the juror "was unable to concentrate on the testimony for all or a good part of [the first day]." In contrast, the People characterize the comments of the juror to reflect that during the testimony of one witness she was in pain and lost her concentration. She blacked out for a period of three seconds to a minute.

> We agree with the People. We view Juror No. 9's comments to indicate that sitting for extended periods of time caused her pain, which, in turn, could cause her to lose concentration. This occurred the previous afternoon "when *the* [singular] witness was there when I was having pain, I lost concentration and I couldn't really understand or – I was blacked out." (Italics added.) She "lost it" for a few seconds, up to a minute.

---

[2] The California Court of Appeal noted that Petitioner's claim that the trial court was obligated to conduct a more thorough inquiry into Juror No. 9's competence as a juror and that the court failed to discharge Juror No. 9 of her duties as a juror was defaulted because he failed to raise any objections at trial. Because the appellate court also disposes of Petitioner's claim on the merits, however, this court need not conduct a *de novo* review. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003) (when a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (same).

1

2

3

4

5

> On this record, it cannot be said Juror No. 9 missed a material portion of the trial, requiring her discharge. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1349 [trial court was not required to discharge juror who had been sleeping during trial in absence of evidence the juror was asleep for a substantial period of material portions of the trial].) "'Before an appellate court will find error in failing to excuse a seated juror, the juror's inability to perform a juror's functions must be shown by the record to be a "demonstrable reality."'" (*People v. Farnam* (2002) 28 Cal.4th 107, 141; *People v. Cleveland* (2001) 25 Cal.4th 466, 484.)

6

(Lodged Doc. 4 at 8-10.)

7

8

Petitioner has failed to demonstrate that the alleged error committed by the trial court

9

in failing to more thoroughly investigate Juror No. 9's ability to adequately discharge her duties as

10

a juror had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*

11

*v. Abrahamson*, 507 U.S 619, 637 (1998). Although he alleges that Juror No. 9 missed a substantial

12

amount of trial testimony, this allegation is unsupported by the record. Moreover, Petitioner does

13

not point to any specific evidence in the record that Juror No. 9 missed or failed to consider, and

14

there is no indication in the record that the accommodations made by the trial court to allow Juror

15

No. 9 to continue to discharge her duties as a juror were insufficient.

16

Moreover, because AEDPA establishes a highly deferential standard for the

17

evaluation of a state-court ruling, a federal court considering a petitioner's federal *habeas corpus*

18

petition must give deference to the last reasoned state-court decision on the merits of a petitioner's

19

claim. Here, the California Court of Appeal determined that the trial court conducted an adequate

20

investigation with regard to Juror No. 9's back pain and her ability to discharge her duties as a juror.

21

The Court of Appeals finding is reasonably supported by this record, and thus is presumed correct.

22

*Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). In support of its determination, the

23

appellate court noted that the trial court engaged in a colloquy with Juror No. 9 to determine the

24

extent of her pain and whether accommodations could be made for her. The appellate court

25

emphasized that the record did not support Petitioner's allegation that Juror No. 9 was entirely

26

unable to concentrate on October 14, 2003, the day that the bulk of the prosecution's case was

presented.  On the contrary, the record indicated that Juror No. 9 had blacked out for a brief period

of time, between three seconds to one minute.  As discussed above, however, juror inattentiveness,

*per se*, does not violate Petitioner's rights to due process, a jury trial, or a fair and impartial jury.

Petitioner has thus failed to demonstrate that the state appellate court's decision was contrary to or

an unreasonable application of clearly established federal law, or that it was based on an

unreasonable determination of the facts.

### B.   PETITIONER'S PRIOR FELONY CONVICTION

Petitioner claims that he did not knowingly, intelligently, and voluntarily waive his

constitutional right to confrontation or his privilege against self incrimination before admitting the

truth of a prior felony conviction.  The California Court of Appeal, Third Appellate District,

summarized the background of Petitioner's claim as follows:

> Before the jury returned its verdicts, the trial court granted the
> People's motion to dismiss one of the two prior prison term allegations
> in the amended information.  The trial court then asked for defendant's
> decision on his right to jury trial on the remaining prior.  Defense
> counsel stated defendant was prepared to waive that right and admit
> the prior.  The court advised defendant of his right to jury trial and
> asked defendant if he voluntarily and freely gave up his right to jury
> trial.  Defendant did.[3]

---

[3] A review of the state court record reflects that, before the jury returned its verdict,
Petitioner and the trial judge engaged in the following colloquy:

| THE COURT: | . . . In light of the People's motion, Mr. Hansen, what is your client's decision with respect to his right to a jury trial on that remaining prior? |
|---|---|
| MR. HANSEN: | My client is prepared to waive that right at this time and admit to the one prior. |
| THE COURT: | Mr. Ross, do you understand what it is we have been discussing here? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | Do you understand that you have the right to have a jury determine the truth of the allegation and conviction that you sustained |

After the verdicts were returned, a question arose as to whether there was going to be a court trial on the prior or if defendant was going to admit the prior. Defense counsel represented defendant was prepared to admit the prior. The trial court then asked defendant if he was admitting the truth of the prior conviction that he suffered on May 20, 1997. Defendant replied, "Yes," and the matter was concluded. The trial court did not expressly advise defendant or obtain defendant's waiver of his right against self-incrimination and right to confrontation.[4]

(Lodged Doc. 4 at 13-14.)

---

THE COURT:      on May 20, 1997?

THE DEFENDANT:  Yeah.

THE COURT:      Are you voluntarily and freely giving up that right to a jury trial, to have a jury determine the truth of that allegation?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:      Counsel, do you concur in the waivers?

MR. HANSEN:     I do, your honor.

(Lodged Doc. 7 at 260.)

[4] After the jury verdict was announced, Petitioner was given the option to proceed with a bench trial or to admit the truth his prior conviction. The following exchange took place:

MS. RAMIREZ:    So the issue, then, is court trial or admission at this point on the prior.

MR. HANSEN:     Let me ask him.

(Pause in proceedings.)

MR. HANSEN:     He is prepared to admit to the prior today, Your Honor.

THE COURT:      Mr. Ross, are you prepared to admit the truth of the prior conviction? Are you admitting the truth of the prior conviction that you suffered on May 20, 1997?

THE DEFENDANT:  Yes.

(Lodged Doc. 7 at 265.)

13

Neither the United States nor the California Constitutions extend a criminal defendant's right to a jury trial to the factual determination of whether that defendant has suffered a prior conviction. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *People v. Epps*, 25 Cal.4th 19, 23 (2001) ("The right, if any, to a jury trial of prior conviction allegations [does not derive]...from the state or federal Constitution."). Rather, the right is supplied by the California Penal Code, which provides that "the question of whether or not the defendant suffered the prior conviction shall be tried by the jury...or by the court if a jury is waived." CAL. PENAL CODE § 1025(b). *See also* CAL. PENAL § 1158 ("Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived, must unless the answer of the defendant admits such previous conviction, find whether or not he has suffered such previous conviction.").

Under California law, a defendant's admission of a prior felony conviction that will be used as a sentence enhancement "is the 'functional equivalent' of a plea of guilty to a separate charge, and, therefore, it may not be accepted unless the defendant understands the consequences of the admission." *Wright v. Craven*, 461 F.2d 1109, 1110 (9th Cir. 1972) (internal citations omitted). Three important federal constitutional rights are implicated in the context of a guilty plea: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin*, 395 U.S. at 243. As such, it is well established that a guilty plea "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Explicit advisement on each of the three implicated constitutional rights is not required, *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974), however a guilty plea must nonetheless represent "a voluntary and intelligent course among

the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  In California, however, "if the transcript does not reveal complete advisements and waivers [of these three constitutional rights], the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of the circumstances." *People v. Mosby*, 33 Cal.4th 353, 361 (2004). *See also People v. Howard*, 1 Cal.4th 1132, 1175 (1992) (holding that the proper test for determining the constitutionality of a criminal defendant's admission of a prior conviction is whether "the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.").

The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim that he did not knowingly, intelligently or voluntarily waive his constitutional right to confrontation or his privilege against self-incrimination on the merits.  The appellate court explained its reasoning as follows:

> In his opening brief on appeal, defendant vigorously argues the true finding on defendant's prior prison term within the meaning of Penal Code section 667.5, subdivision (b), must be stricken and the matter remanded because the record does not affirmatively establish defendant's admission was intelligent and voluntary under the totality of the circumstances.  To his credit, in his reply brief, defendant recognizes that since the filing of his opening brief, the California Supreme Court has decided *People v. Mosby* (2004) 33.Cal.4th 353 (*Mosby*), disapproving most of the cases defendant cites in his opening brief.  (*Id.* at p. 365, fn. 3 [disapproving to the extent they are inconsistent with its holding]; *People v. Van Buren* (2001) 93 Cal.App.4th 875; *People v. Carroll* (1996) 47 Cal.App.4th 892; *People v. Garcia* (1996) 45 Cal.App.4th 1242; *People v. Torres*, 43 Cal.App.4th 1073; *People v. Howard* (1994) 25 Cal.App.4th 1660.)
>
> In *Mosby* the Supreme Court noted that it had previously adopted the federal constitutional test of whether under the totality of the circumstances the defendant's admission is intelligent and voluntary and thereby "rejected the rule that 'the absence of express admonitions and waivers requires reversal regardless of prejudice.'" (*Mosby, supra,* 33 Cal.4th at p.361, citing *People v. Howard* (1992) 1 Cal.4th 1132, 1178.)  "Now, if the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of

15

the circumstances." (*Mosby*, *supra*, at p. 361.)  The Supreme Court then approved the conclusion that the defendant's admission was intelligent and voluntary in *Mosby*, where the defendant, represented by counsel, had just undergone a jury trial at which he did not testify and where he had, through counsel, confronted witnesses. Defendant's knowledge of his rights to remain silent at trial and to confront witnesses was demonstrated by his exercise of those rights in the immediately concluded trial.  (*Id.* at p. 364.)  Moreover, the defendant's prior experience with the criminal justice system indicated his knowledge of his legal rights. (*Ibid*.)

Similarly here, when defendant admitted the remaining alleged prior prison term enhancement, he had just undergone a jury trial at which he did not testify, thereby demonstrating his knowledge and exercise of his right against self-incrimination.  Defendant had also, through his counsel, exercised his right to confrontation.  Moreover, the record reflects defendant has numerous prior convictions going back to 1988, indicating his familiarity with the criminal justice system and his legal rights.

Under the totality of the circumstances we conclude defendant voluntarily and intelligently admitted his prior prison term despite being advised and having waived only his right to a jury trial.

(Lodged Doc. 4 at 14-16.)

As discussed above, AEDPA establishes a highly deferential standard for the evaluation of a state-court decision on the merits of a petitioner's claim.  Here, the California Court of Appeal rejected Petitioner's claim on the grounds that under the totality of the circumstances, Petitioner's admission of his prior felony conviction as true was made voluntarily and intelligently. In support of this finding, the appellate court found it significant that Petitioner had just undergone a jury trial in which he was represented by counsel, and had exercised his right against self-incrimination by choosing not to testify.  In addition, the appellate court emphasized that Petitioner had, through counsel, exercised his right to confrontation by examining witnesses during the trial. Finally, the appellate court noted that Petitioner's criminal record demonstrated numerous convictions spanning a sixteen-year time period, and found this indicative of Petitioner's familiarity with the criminal justice system and his own legal rights.  "A defendant's prior experience with the criminal justice system [is] relevant to the question of whether he knowingly waived constitutional rights." *Park v. Raley*, 506 U.S. 20, 37 (1992).  The mere fact that Petitioner was not explicitly

advised of his privilege against self incrimination or his right to confrontation is insufficient to demonstrate that, under the totality of the circumstances, Petitioner's admission of his prior felony conviction was not knowing, intelligent and voluntary. Petitioner has failed to demonstrate that the decision of the California Court of Appeal was contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts.

C.      SECTION 1109 OF THE CALIFORNIA EVIDENCE CODE

Petitioner's final claim is that his federal due process rights were violated when the trial court admitted evidence that he had committed prior acts of domestic violence. According to Petitioner, section 1109 of the California Evidence Code is unconstitutional both on its face and as applied to him because it allows the use of prior acts of domestic violence as propensity evidence in a criminal prosecution for domestic violence. The California Court of Appeal, Third Appellate District, summarized the background of Petitioner's claim as follows:

> The prosecution moved pretrial to be allowed to introduce evidence of defendant's prior acts of domestic violence under Evidence Code section 1109. The trial court ruled the prosecution would be allowed to use an incident occurring in 1995 involving Patricia L., as well as the statement of Latrice in her 2003 application for a restraining order that there had been unreported past physical abuse by defendant.

(Lodged Doc. 4 at 12.)

Section 1109 of the California Evidence Code, which governs the admission of prior acts of domestic violence in a criminal proceeding, provides in relevant part:

> (a)
>
> (1) . . . in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.
> . . .
> (e) Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice.

Evidence of prior acts of domestic violence otherwise admissible under section 1109, therefore, may

be excluded by the trial court under section 352 of the California Evidence Code conducting a balancing test to determine whether the "probative value [of the evidence] is outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  In addition, section 1101 of the California Evidence Code generally permits the admission of relevant character evidence or prior bad acts only to prove a fact *other* than a criminal defendant's conduct on a particular occasion or his propensity to commit such an act.  Under section 1109, however, so long as evidence regarding prior acts of domestic violence committed by a criminal defendant is not rendered inadmissible by the balancing test set forth in section 352, section 1101 will not prohibit the admission of that evidence in a criminal prosecution, even to prove a defendant's propensity to commit acts of domestic violence or his conduct on a particular occasion.  *See People v. Johnson*, 185 Cal.App.4th 520, 529 (2010) (noting that CAL. EVID. CODE §§ 1108 and 1109 "allow testimony about prior misconduct. . . [and] they allow the jury to draw propensity inferences from the prior acts" so long as that evidence is admissible under CAL. EVID. CODE § 352.); *People v. Jennings*, 81 Cal.App.4th 1301, 1309 (2000) (finding that admission of prior acts evidence under CAL EVID. CODE § 1109 to demonstrate a criminal defendant's propensity to commit a crime did not amount to a due process violation because CAL. EVID. CODE § 352 conditions the admission of such evidence on a determination that the evidence is more probative than prejudicial).

Generally, "a state court's evidentiary ruling, even if erroneous, is grounds for federal *habeas* relief only if it is so fundamentally unfair as to violate due process."  *Spivey v. Rocha*, 194 F.3d 971, 977 (9th Cir. 1999).  *See also Jammal v. Van de Kamp*, 926 F.2d 918 919 (9th Cir 1991) ("[T]he issue, for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.").  Therefore, in order to establish that evidence admitted by the trial court pursuant to section 1109 of the California Evidence Code violated his due process rights, Petitioner bears the heavy burden of demonstrating that the admission of the challenged evidence "offends some principle of justice so rooted in the traditions

and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 201-201 (1977) (internal citations omitted).  *See also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (applying the *Patterson* test).  In other words, Petitioner must establish that the admission of the challenged evidence "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141 (1973)).

The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's due process claim on the merits, explaining its reasoning as follows:

> Defendant now claims on appeal that the introduction of such evidence under Evidence Code section 1109 violated his right to due process under the Fifth and Fourteenth Amendments.  Although defendant states in one sentence in his opening brief that Evidence Code section 1109 "is unconstitutional on its face and as applied," the remainder of defendant's argument only argues the statute is unconstitutional on its face.  Defendant contends the cases upholding the constitutionality of Evidence Code section 1109 against similar due process challenges are wrongly decided.  We disagree.
>
> We continue to be persuaded that Evidence Code section 1109 does not violate due process.  This court rejected such [a] claim in *People v. Johnson*, 77 Cal.App.4th 410, 412, 416-420, which applied the reasoning of the California Supreme Court's decision in *People v. Falsetta* (1999) 21 Cal.4th 903.  The holding of *Falsetta*, rejecting a due process of law attack on Evidence Code section 1108, applies by parity of reasoning to the "virtually identical" Evidence Code section 1109.  (*Johnson*, *supra*, at p.417.)  Other Courts of Appeal have reached the same conclusion.  (*People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1097; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1309-1310; *People v. Brown* (2000) 77 Cal. App.4th 1324, 1334-1338; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1025-1029.)  "In short, the constitutionality of [Evidence Code] section 1109 under the due process clauses of the federal and state constitutions has now been settled."  (*Jennings*, *supra*, at p. 1310)
>
> We do not need to discuss defendant's claim that Evidence Code section 1109 was unconstitutionally applied to him because defendant merely asserts the point without argument or authority.

Under the highly deferential standard established by AEDPA, it cannot be said that the state court's rejection of Petitioner's due process claim is contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts.  Indeed, the United States Supreme Court "has never expressly held that it violates due

19

process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001). On the contrary, the Supreme Court has expressly left this question open, noting that it has "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' to show propensity to commit a charged crime." *Estelle*, 502 U.S. at 75 n.5.

In addition to the absence of clearly established United States Supreme Court precedent supporting Petitioner's claim, the Ninth Circuit has rejected a similar due process challenge to section 414 of the Federal Rules of Evidence, which permits the admission of prior acts of child molestation in a federal criminal prosecution for child molestation, as constitutional. *United States v. LeMay*, 260 F.3d 1018, 1022 (9th Cir. 2001). While the Federal Rules of Evidence do not include a domestic violence exception to the general exclusion of propensity evidence, section 414 is analogous to section 1109 of the California Evidence Code in that it allows a trial court to admit evidence of prior acts of child molestation "to be considered for its bearing on any matter to which it is relevant," including to prove a criminal defendant's propensity to commit acts of child molestation. FED. R. EVID. § 414. In concluding that section 414 is constitutional, the Ninth Circuit found that "there is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414. As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." *LeMay*, 260 F.3d at 1022. Rule 403 is the federal equivalent to section 352 of the California Evidence Code, and requires a trial court to conduct a balancing test to determine whether relevant evidence should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. § 403. Section 1109 of the California Evidence Code functions almost identically to

1    section 414 of the Federal Rules of Evidence in that section 352 acts as a procedural filter that

2    excludes evidence so prejudicial that its admission would constitute a due process violation.  It is

3    clear from the record in Petitioner's case that the trial judge conducted the requisite balancing test

4    before determining what evidence of prior acts of domestic violence, if any, would be properly

5    admitted.  (Lodged Doc. 7 at 20-21 and 23-26).

6         Petitioner has failed to demonstrate that "the traditional ban on propensity evidence

7    involves a 'fundamental conception of justice'" which is violated by section 1109 of the California

8    Evidence Code.  *LeMay*, 260 F.3d at 1025.  Petitioner has thus failed to demonstrate that the

9    admission of propensity evidence in general violates due process.  His claim that section 1109 is

10   unconstitutional on its face, therefore, must be denied.  Moreover, Petitioner's conclusory allegation

11   that section 1109 is unconstitutional as applied to him is not supported by any reference to the record

12   or facts in this case, and therefore, must also be denied.  *See Jones v. Gomez*, 66 F.3d 199, 204-05

13   (9th Cir. 1995) ("It is well settled that 'conclusory allegations which are not supported by a

14   statement of specific facts do not warrant habeas relief.'" (quoting *James v. Borg*, 24, F.3d 20, 26

15   (9th Cir. 1994)).

16   VI.    CONCLUSION

17        Accordingly, IT IS RECOMMENDED that Petitioner's petition for writ of *habeas*

18   *corpus* be denied.

19        These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

21   days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within seven days after service of the objections.  Failure to file objections

25   within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*,

26   158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any

objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 26, 2010


CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

22